UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:                                                    Case Number: 17-12413-13

    JASON J. KRUS and
    TRINA B. KRUS,

          Debtors.

DELLS LAND AND CATTLE
COMPANY II, LLC,

          Plaintiff,

      v.                                          Adversary Number: 19-48

JASON J. KRUS, TRINA B. KRUS,
and WISCONSIN MUTUAL INSURANCE
COMPANY,

          Defendants.

## **DECISION**

Jason and Trina Krus (the "Kruses") filed a joint Chapter 13 petition in July 2017. The Court confirmed their Chapter 13 Plan in April 2018. Fifteen months later, Dells Land & Cattle Company II, LLC ("DLCC") filed this adversary proceeding to recover money from the Kruses for damages to collateral. DLCC named the Kruses' insurer, Wisconsin Mutual Insurance Company ("Wisconsin Mutual"), as a co-defendant in the adversary. DLCC filed an amended complaint ("Amended Complaint") on October 11, 2019.

Wisconsin Mutual moved for Judgment on the Pleadings. Six days later, the Kruses filed a Motion to Abstain and Remand or, in the Alternative, to Dismiss the Adversary Proceeding (the "Motion"). DLCC opposes the Motion.

After reviewing the adversary complaints and the subsequently filed motions, the Court held a preliminary hearing and invited all parties to address whether the Court may exercise jurisdiction over the adversary proceeding. The parties filed briefs and the matter was taken under advisement.

A separate decision will address Wisconsin Mutual's Motion for Judgment on the Pleadings.

### BACKGROUND

The following is the Court's summary of the facts as they have been conveyed by the different parties. The Court is summarizing the facts because it is essential that the facts asserted be an accurate reflection of the record.[1]

In 2016, the Kruses and DLCC executed a land contract secured by real estate in Wisconsin Dells (the "Property"). The Kruses defaulted under the land contract. DLCC filed a strict foreclosure action in Adams County ("Adams County Action") in March 2017.[2] The Kruses filed their bankruptcy petition four months later and agreed to surrender the Property to DLCC under the terms of their five-year Chapter 13 Plan.

---

[1] As shown by the recitation of the facts, there are certain errors in the Kruses' pleadings. For example, the Kruses' Motion (ECF No. 20) and supplemental brief (ECF No. 48) assert DLCC waited over two years to bring this adversary action after receiving a strict foreclosure judgment in state court. This is incorrect. DLCC waited 13 months to file its adversary complaint.

[2] Case no. 2017CV0038

This Court granted DLCC relief from the stay related to the Property in May 2018. One month later, DLCC was awarded a judgment of strict foreclosure in the Adams County Action. DLCC performed an inspection of the Property on July 2, 2018. The inspection revealed certain damages to the Property. DLCC filed this adversary proceeding on July 22, 2019—approximately a year after the inspection.

The Amended Complaint alleges that before its surrender, the Kruses caused extensive damage to the Property, including to fixtures that were part of the real estate. DLCC estimated a loss of $63,000 in value because of the damages. DLCC has since increased this estimate to $77,000. It also alleges it is owed a combined $9,824.07 for unpaid real estate taxes and missed escrow payments. The Amended Complaint asserts six causes of action: (1) breach of land contract; (2) negligence; (3) property damages; (4) conversion; (5) statutory theft under Wis. Stat. §§ 895.446 and 943.20; and (6) criminal damage to property under Wis. Stat. §§ 895.446 and 943.01.

The Kruses argue the Court lacks subject matter jurisdiction to consider the claims asserted because the *Rooker-Feldman* doctrine prevents this Court from providing DLCC with a different remedy than the strict foreclosure judgment awarded in the Adams County Action. Thus, the Kruses wish for the Court to view this adversary as a non-core mortgage foreclosure action and move for mandatory abstention under 28 U.S.C. § 1334(c)(2). In the alternative, the Kruses argue for permissive abstention under 28 U.S.C. § 1334(c)(1) because the claims asserted by DLCC are all state law causes of action and

remand to Adams County would be appropriate. Lastly, the Kruses move to dismiss the adversary proceeding under Federal Rule of Civil Procedure 12(b)(6).[3] They argue the Court cannot grant the relief sought since DLCC has already obtained a strict foreclosure judgment in state court.

DLCC counters that it is not seeking to "set aside" a state court judgment and that its claims here are independent of the judgment entered in the Adams County Action. In other words, DLCC asserts the *Rooker-Feldman* doctrine is inapplicable in this adversary action. DLCC urges against permissive abstention. It contends it is unnecessary to abstain and remand in the interests of justice, comity, or out of respect for state law.

Wisconsin Mutual explicitly consents to this Court's exercise of jurisdiction over this matter and largely adopts DLCC's argument that *Rooker-Feldman* does not apply to this case.

## DISCUSSION

The Kruses' Motion and arguments raise four issues: (1) whether the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; (2) whether the Court must abstain under mandatory abstention; (3) whether the Court should abstain under permissive abstention; and (4) whether the Court should dismiss the adversary proceeding. The Court will address each issue in order.

---

[3] The Motion cites FED. R. CIV. P. 12(b)(6). This rule is incorporated in FED. R. BANKR. P. 7012(b)(6).

A. <u>The Court Has Subject Matter Jurisdiction.</u>

The *Rooker-Feldman* doctrine provides that federal appellate jurisdiction to reverse or modify a state-court judgment is vested only in the United States Supreme Court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). *See also* 28 U.S.C. § 1257. "[I]f a claim is barred by the *Rooker-Feldman* doctrine, a federal court lacks subject matter jurisdiction over the [claim]." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).

The doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). It is irrelevant whether such claims were argued in the state court "because inextricably intertwined claims require the federal court 'in essence' to review the state court decision." *Wylie v. Bank of N.Y. Mellon*, 856 F. Supp. 2d 837, 843 (E.D. La. 2012) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983)). The Supreme Court elaborated on the definition of "inextricably intertwined":

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987). *See also Guess v. Bd. of Med. Exam'rs*, 967 F.2d 998, 1002-03 (4th Cir. 1992) (recasting claims under the guise of claims not raised or decided by a state court does not circumvent

*Rooker-Feldman* when the claims are inextricably intertwined with the merits of the state court judgment).

The *Rooker-Feldman* analysis depends on whether "the district court is in essence being called upon to review the state-court decision." *Feldman*, 460 U.S. at 483-84 n.16. The "pivotal inquiry . . . is whether the federal [litigant] seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Long v. Shorebank Development Corp.,* 182 F.3d 548, 555 (7th Cir. 1999) (internal citations and quotations omitted). As the Seventh Circuit noted:

> [T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, . . . *Rooker-Feldman* does not [apply].

*Garry v. Geils*, 82 F.3d 1362, 1365–66 (7th Cir. 1996). *See also Exxon Mobil Corp.*, 544 U.S. at 284 (*Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting [lower federal court] review and rejection of those judgments."); *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995) ("A defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed . . . for lack of jurisdiction.").

The Kruses maintain this adversary proceeding seeks to set aside the strict foreclosure judgment and that DLCC is prohibited from collecting the amount of the debt arising under the land contract. Thus, the Kruses believe the *Rooker-Feldman* doctrine prevents this Court from providing DLCC with a different remedy than what was awarded to them in the Adams County Action.

DLCC counters that the *Rooker-Feldman* doctrine does not apply to deprive this Court of jurisdiction. DLCC contends its claims are independent of, and not caused by, the judgment entered in the Adams County Action. The Court partially agrees.

The Kruses' argument that DLCC is trying to set aside the state court's judgment is simply wrong. DLCC is not asking this Court to overturn any judgments or to make any findings that would impair the prior judgment entered in the Adams County Action. This adversary is not a mortgage foreclosure action. Rather, it seeks to recover money from the Kruses due to alleged damages caused to the Property. The Court is unaware that DLCC's asserted damage claims have already been adjudicated by any state courts. The damage claims are not "inextricably intertwined" with the strict foreclosure judgment. DLCC is not trying to recover money for unpaid principal and interest owed on the Property. Most of DLCC's claims stem from alleged damages that are independent of the claims asserted in the Adams County Action. Thus, *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over DLCC's damage claims in this adversary action.

That said, *Rooker-Feldman* prohibits this Court from reviewing and ruling on DLCC's real estate tax and escrow claim. In Wisconsin, unpaid real estate taxes become a lien on property under Wis. Stat. § 70.01. That section provides that when real estate tax liens are levied, "such taxes are a lien upon the property against which they are charged. The lien is *superior* to all other liens[.]"[4] Wis. Stat. § 70.01 (2019-2020) (emphasis added). *See also First Wisconsin Trust Co. v. Rosen*, 143 Wis. 2d 468, 473, 422 N.W.2d 128 (Wis. Ct. App. 1988). Thus, the county where the land is located may purchase the property at a tax sale. *See County of Dane v. Every*, 131 Wis. 2d 592, 393 N.W.2d 799, 1986 Wisc. App. LEXIS 3460, at *3 (Wis. Ct. App. 1986). Before the deed is recorded, the property may be redeemed by paying all taxes, interest, and penalties due. Wis. Stat. § 75.01(1)(b) (2019-2020). DLCC would have had to pay the delinquent real estate taxes under the land contract if they sought to redeem the Property in a hypothetical foreclosure by Adams County.

DLCC had a number of possible remedies when the Kruses defaulted. It selected strict foreclosure. Strict foreclosure is a well-established common law remedy. The vendor "forgoes his or her right to collect the amount remaining on the debt and instead recovers the property." *Steiner v. Wisconsin Am. Mut. Ins. Co.,* 2005 WI 72, ¶ 26, 281 Wis. 2d 395, 697 N.W.2d 452. So, the full unpaid purchase price "together with delinquent interest and taxes" is what must be paid if the vendee wants to redeem. *Kallenbach v. Lake Publ'ns, Inc.,*

---

[4] There are two exceptions to the superiority of the tax lien under Wis. Stat. §§ 292.31(8)(i) and 292.81. These exceptions do not apply to this case.

30 Wis. 2d 647, 657, 142 N.W.2d 212, 217 (1966). If those amounts are not paid, the vendor takes title. That is what occurred here. The debt resolved by the strict foreclosure was the principal, interest, taxes, and costs associated with the strict foreclosure.

Furthermore, the real estate taxes were part of the underlying land contract debt. Under Addendum A to the land contract, the Kruses agreed to pay the monthly real estate tax payments. Default of such payments was a ground for the award of the strict foreclosure judgment. DLCC has already received the remedy they were entitled to with respect to the delinquent real estate taxes. *Rooker-Feldman* prohibits this Court from addressing any claim for unpaid real estate taxes. That was integral to the Adams County Action strict foreclosure judgment.

For these reasons the claim for unpaid real estate taxes is barred by the *Rooker-Feldman* doctrine. The remaining claims, however, are not so barred.

B. Mandatory Abstention

Federal district courts have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Federal district courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), the District Court for the Western District of Wisconsin has referred all bankruptcy cases to the Bankruptcy Court for the Western District of Wisconsin. W.D. Wis. Admin. Order 161 (July 12, 1984).

Still, 28 U.S.C. § 1334(c)(2) calls for mandatory abstention by a bankruptcy court in appropriate circumstances. The mandatory abstention provision reads:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

There are thus five elements of mandatory abstention: (1) a timely motion of a party, (2) relating to a cause of action arising under state law, (3) which is a non-core proceeding in bankruptcy court, (4) where the only basis for federal jurisdiction is section 1334, and (5) that has also been commenced in a state forum of appropriate jurisdiction. *Holzhueter v. Groth (In re Holzhueter),* 571 B.R. 812, 815 (Bankr. W.D. Wis. 2017); *Bennett v. Sveinsvoll (In re Bennett),* 376 B.R. 918, 921 (Bankr. W.D. Wis. 2007). *See also Ortiz v. Aurora Health Care, Inc. (In re Ortiz),* 422 B.R. 161, 164 (Bankr. E.D. Wis. 2010) ("The statute is phrased in the conjunctive; all five elements must be met in order for the bankruptcy court to recognize mandatory abstention.").

DLCC insists the Kruses' Motion was not timely filed. The parties also disagree as to whether the adversary action is a core proceeding. But the discussion of mandatory abstention here ends with the last element: no related action has been commenced in a state forum of appropriate jurisdiction.

Through multiple pleadings, the Kruses have made two arguments relating to the last element. First, the Motion asserts that a "State Court Action

can be reopened to prosecute [DLCC's] claims related to the property."[5] While

this may be true, bankruptcy courts must only abstain when "an *action is*

*commenced*, and can be timely adjudicated, in a State forum of appropriate

jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis added). The Court lacks any

evidence that an action has been filed in state court to recover money for

damages to the Property and the other causes of action stemming from said

damages. Secondly, while addressing the five elements in a supplemental brief,

the Kruses argue that "the alleged claims arise out of a State Court Action."[6]

The Kruses fail to show an understanding of the last and final element that a

state court action must be filed to satisfy the mandatory abstention

requirements of 28 U.S.C. § 1334(c)(2). There was a strict foreclosure action. It

is complete and closed. There is no evidence of a state court action seeking

recovery for the claims in this case. This adversary relates to alleged damages

to the Property discovered after strict foreclosure was granted.

Title 28 does not require the Court to abstain from this adversary

proceeding.

C. <u>Permissive Abstention</u>

While the Court is not required to abstain, it can choose to do so under

permissive abstention. Section 1334(c)(1) provides that "nothing in this section

prevents a district court in the interest of justice, or in the interest of comity

with State courts or respect for State law, from abstaining from hearing a

---

[5] ECF No. 20 at ¶ 13.

[6] ECF No. 41 at 5.

particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

> This provision recognizes that bankruptcy courts have exclusive and nondelegable control over the administration of an estate, but in exercising that control "may, where the interests of the estate and the parties will best be served . . . consent to submission to State courts of particular controversies involving unsettled questions of state . . . law and arising in the course of bankruptcy administration."

*Holzhueter*, 571 B.R. at 815 (quoting *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 483 (1940)).

Courts in this circuit consider twelve factors in deciding whether to abstain under 28 U.S.C. § 1334(c)(1). Those factors are:

(1)   the effect or lack thereof on the efficient administration of the estate;

(2)   the extent to which state law issues predominate over bankruptcy issues if the court recommends abstention;

(3)   the difficult or unsettled nature of applicable law;

(4)   the presence of related proceedings commenced in state court or other non-bankruptcy proceedings;

(5)   any jurisdictional bases, other than 28 U.S.C. § 1334;

(6)   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)   the substance rather than the form of an asserted core proceeding;

(8)   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)   the burden of the bankruptcy court's docket;

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties.

*Holzhueter*, 571 B.R. at 815-16 (citing *In re Chicago, M. & St. P. & Pac. R.R.,* 6 F.3d 1184, 1189 (7th Cir. 1993)). No one factor is dispositive. *See Chicago*, 6 F.3d at 1189. These factors "should be applied flexibly to the particular facts of each case." *Holzhueter*, 571 B.R. at 816.

> *(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention*

The Kruses and DLCC make similar arguments under the first factor. The Kruses admit that this adversary proceeding is not hampering the Court's ability to efficiently administer the bankruptcy estate.[7] DLCC believes the Court's resolution of this adversary action will lead to efficient administration of the estate because the Court can enter appropriate orders to effect any modification of the Kruses' Chapter 13 Plan.[8]

The Court agrees. Permissive abstention will only lead to a significant disruption in the efficient administration of the estate. This Court has familiarity with the Kruses' circumstances and the terms of their five-year Chapter 13 Plan. Turning this matter over to a state court will open the door for significant delays in the administration of the main bankruptcy case as the

---

[7] ECF No. 41 at 6.

[8] The Kruses have stated an intention to convert their case to a Chapter 7. This adversary will not hamper administration of the case if it is converted.

Kruses may be unable to adhere to the terms of their confirmed plan. The recent COVID-19 health crisis and the expected interruptions for state courts will only magnify delays. Additionally, a state court's findings and rulings may affect the treatment of creditors under the Kruses' confirmed plan—creating further issues that will need to be resolved back in this Court. If the case is converted, the question of whether there are any dischargeable claims will remain. Thus, a determination in this Court is more efficient.

This Court can determine the claims asserted against the Kruses in a manner that will provide for the least possible amount of disruptions to the bankruptcy estate. As a result, factor (1) weighs against permissive abstention.

### (2) The extent to which state law issues predominate over bankruptcy issues if the court recommends abstention

Next, factor (2) also weighs against abstention. The Amended Complaint asserts six causes of action: (1) breach of land contract; (2) negligence; (3) property damages; (4) conversion; (5) statutory theft under Wis. Stat. §§ 895.446 and 943.20; and (6) criminal damage to property under Wis. Stat. §§ 895.446 and 943.01. DLCC concedes that its claims are based primarily on state law, but contends the claims are directly related to the Kruses' Chapter 13 Plan and the surrender of the Property that secured DLCC's filed Proof of Claim. The Kruses argue that no bankruptcy issues are raised other than that they are debtors in a Chapter 13 bankruptcy. The Kruses are, in part, correct.

The six causes of action turn on state law issues. The claim for breach of contract relates back to the land contract itself. It could have been included in the strict foreclosure action if DLCC knew about the alleged damages before

14

taking possession of the Property. The negligence, conversion, theft, and criminal damage claims do not depend on the land contract. And DLCC learned about the alleged damages after being awarded the judgment of strict foreclosure and the conclusion of the Adams County Action. In any event, adjudication of the asserted state law issues will allow for a more efficient administration of the Kruses' bankruptcy case.

While the Amended Complaint is couched in terms of state law causes of action, the determinations of such claims will have a direct effect on the Kruses' bankruptcy estate and case. And so, it does not appear the asserted state law issues can be characterized as predominating over the bankruptcy issues. Bankruptcy courts regularly apply state law in determining a host of bankruptcy-related matters. For instance, bankruptcy courts often apply state laws when resolving dischargeability disputes under section 523 of the Code. This Court can adjudicate the state law causes of action in an expeditious and efficient manner. The Court would be more likely to abstain if the state law causes of action involved family-related matters, such as divorce or custody of children. *See, e.g.*, *Bennett*, 376 B.R. at 922 (citing *In re Burrus*, 136 U.S. 586, 593 (1980)).

The current case is a Chapter 13 and any claims that may be decided in the adversary might affect the Kruses' ability to complete or amend their plan. On the other hand, the Kruses suggest they intend to convert the case to a Chapter 7. If the case is in fact converted, there would be a deadline established for nondischargeability actions. Based on the Amended Complaint,

15

an action to determine nondischargeability might be filed by adding applicable provisions of section 523 to the same facts and allegations asserted in the Amended Complaint. From an efficiency perspective, permissive abstention would only defer that possibility.

*(3) The difficulty or unsettled nature of the applicable law*

The third factor weighs against abstention. The Kruses' concede that DLCC's causes of action "are not based upon difficult or unsettled law."[9] This Court agrees and is capable of a straightforward application of the alleged claims for breach of contract, property damage, negligence, conversion, and statutory theft by the Kruses. Above all, no other courts have heard or ruled on any of the asserted causes of action. This Court's adjudication of the asserted claims will not lead to competing judgments or findings between different courts. The applicable state law is neither difficult to apply nor unsettled. Thus, factor (3) weighs against abstention.

*(4) The presence of a related proceeding commenced in state court or other non-bankruptcy court*

Factor (4) also weighs against abstention. There are no pending state court proceedings against the Kruses. The Adams County Action related to a judgment of strict foreclosure is now closed. There is no pending action to recover money for alleged damages to the Property.

---

[9] ECF No. 41 at 6.

*(5) The jurisdictional bases, if any, other than 28 U.S.C. § 1334*

Factor (5) weighs in favor of abstention because the Court lacks independent jurisdiction over the causes of action. There is no basis for jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship is lacking. The Kruses are citizens of Wisconsin, and DLCC is a limited liability company with its principal place of business in Brookfield, Wisconsin. For that reason, section 1334 provides the only jurisdictional basis—making this factor weigh in favor of abstention.[10]

*(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case*

Factor (6) weighs strongly against abstention. DLCC's claims may directly affect the Kruses' ability to continue with their five-year Chapter 13 Plan or may even require the filing and confirmation of a modified plan. The treatment of creditors under the current plan could be substantially altered by the outcome of this adversary proceeding. DLCC's claims stem from the surrender of the Property pursuant to the Kruses' confirmed plan. There is a substantial degree of relatedness between the adversary proceeding and the main bankruptcy case.

*(7) The substance rather than form of an asserted "core" proceeding*

Factor (7) also weighs strongly against abstention. The Kruses argue that this adversary proceeding is a mortgage foreclosure action and is thus not a

---

[10] The analysis under factor (5) may change if the case is converted to a Chapter 7. The reason is that there is the possibility that an adversary would be refiled asserting nondischargeability.

core proceeding. The Court has covered the flaws of this argument. This adversary is not a mortgage foreclosure action.

The Kruses further argue that DLCC's causes of action are "non-core and remote due to the fact that they are post-petition claims that are unaffected by [their] Amended Plan."[11] This assertion is false. There is no dispute the alleged damages here occurred post-petition. However, it is well understood that post-petition claims affect how much is available for distributions to other creditors under a confirmed plan—especially unsecured creditors who are set to receive pro rata distributions under a plan.

With that in mind, the Court finds this adversary action to be a core proceeding under 28 U.S.C. § 157 because its outcome may affect "the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," and is not a personal injury tort or wrongful death claim. 28 U.S.C. § 157(b)(2)(O). This adversary is also a core proceeding under 28 U.S.C. § 157(b)(2)(A) because it concerns the administration of the estate as the Kruses still have three more years left under their confirmed plan.

> *(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state courts with enforcement left to the bankruptcy court*

Factor (8) weighs against abstention. It is possible to sever DLCC's state law claims from the core bankruptcy matters. The material issue is whether that would be feasible or practical. As described, it is highly probable that a

---

[11] ECF No. 41 at 7.

state court's ruling on DLCC's claims would lead to this Court having to alter the rights of other creditors under the Kruses' confirmed plan. But considering the COVID-19 outbreak and the described impact it will have on state court dockets, it would likely take years before a state court could rule on the asserted claims.

This Court must remain aware of the timing and efficient administration of its own docket. No matter if the Kruses remain in a Chapter 13, or convert to a Chapter 7, their main bankruptcy case is still part of this Court's docket. A timely and efficient ruling on this adversary action will translate to a quicker conclusion of the Kruses' bankruptcy case. Depending on the outcome, the Court will be able to oversee any appropriate changes to the Kruses' confirmed plan and the treatment of their creditors.

*(9) The burden of the Court's docket*

Factor (9) weighs against abstention for largely the same reasons described under factor (8). Abstention would delay a timely closure of the Kruses' bankruptcy case—unnecessarily burdening this Court's docket. A state court would likely not adjudicate this action more promptly than this Court. Additionally, this Court's current docket allows for a timely resolution of this adversary proceeding.

*(10) The likelihood that the commencement of the proceeding in a*
*bankruptcy court involved forum shopping by one of the parties*

Factor (10) is inapplicable. Neither the Kruses nor DLCC address this factor or suggest that it applies.

19

*(11) The existence of a right to a jury trial*

Factor (11) is also inapplicable. The parties do not address this factor or suggest that it applies.

*(12) The presence in a proceeding of non-debtor parties*

There is a non-debtor party as a named defendant. But that defendant, Wisconsin Mutual, has explicitly consented to this Court's exercise of jurisdiction over this matter. Thus, factor (12) weighs against abstention.

After carefully considering all twelve factors under the facts of this adversary action, the Court finds that permissive abstention is not appropriate.

D. <u>The Motion to Dismiss</u>

A defense to a complaint is that the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint attacked by a Rule 12(b)(6) motion need not include detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But a plaintiff must provide more than labels and conclusions. *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard asks for more than a "sheer possibility"

20

that a debtor or defendant has acted unlawfully. *Id.* There are two "working principles" the Supreme Court has set forth in analyzing motions to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678-79 (citations omitted).

The Kruses move to dismiss this adversary action under FED. R. BANKR. P. 7012(b)(6), adopting FED. R. CIV. P. 12(b)(6). They contend that even if the Court accepts all the allegations in the Amended Complaint as true, the Court cannot grant the relief sought since DLCC obtained a strict foreclosure judgment in the Adams County Action. The Kruses argue under *Kallenbach v. Lake Publ'ns, Inc.*, 30 Wis. 2d 647, 142 N.W.2d 212, 216 (1966), that by electing the remedy of strict foreclosure, DLCC waived any right to collect the amount of the debt arising under the land contract.[12] Simply put, a land vendor "cannot demand the return of the land and also ask for the total purchase price." *Id.* As described, this adversary action is not a request to recover the purchase price and the land. Instead, it seeks a determination of

---

[12] ECF No. 20 at ¶ 19.

damages to the Property and asserts state law claims that flow from the alleged damages.

In a strict foreclosure action under Wisconsin law, "the land contract vendor forgoes his or her right to collect the amount remaining on the debt and instead recovers the property." *Republic Bank v. Lichosyt,* 2007 WI App 150, ¶19, 303 Wis. 2d 474, 736 N.W.2d 153 (quoting *Steiner v. Wisconsin Am. Mut. Ins. Co.,* 2005 WI 72, ¶ 26, 281 Wis. 2d 395, 697 N.W.2d 452). While a vendor cannot demand the return of the land and the full purchase price, a vendor is not precluded from bringing other claims stemming from the parties' relationship under a land contract. *See, e.g., Disrud v. Arnold*, 167 Wis. 2d 177, 182, 482 N.W.2d 114 (Wis. Ct. App. 1992) (finding that a foreclosure judgment does not forfeit the plaintiff's insurance claim; plaintiff was not suing for the balance on the land contract).

DLCC argues that a contrary holding would mean that land contract vendors have no recourse against purchasers who default and damage the property after the vendor reclaims possession through a strict foreclosure. The Court agrees. It would be inequitable to prohibit DLCC to recover money for alleged damages to the Property simply because it obtained a judgment of strict foreclosure in the Adams County Action. Surrendering a property because of a strict foreclosure judgment does not give the surrendering party free rein to commit unlawful acts against the property or the land vendor.

When considering a motion to dismiss under Rule 7012(b)(6), the Court presumes that all well-pleaded allegations are true, views all reasonable doubts

and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). Viewing all doubts and inference in favor of DLCC, the Amended Complaint states facially plausible claims for damages, as well as the other causes of action that stem from the alleged damages. But for the reasons described under the *Rooker-Feldman* analysis, DLCC's Amended Complaint does not state a facially plausible claim for delinquent real estate taxes. Thus, DLCC's claim for the unpaid real estate taxes is dismissed.

The Court makes no other findings about the merits of DLCC's adversary action against the Kruses. This decision is merely a finding that: (1) the Court does not lack subject matter jurisdiction over DLCC's damage, negligence, conversion, and statutory theft claims; (2) the Court lacks subject matter jurisdiction over DLCC's delinquent real estate tax claim; (3) mandatory abstention is not required; (4) permissive abstention is not appropriate; (5) DLCC's Amended Complaint states claims sufficient to defeat a motion to dismiss with respect to the alleged Property damage, negligence, conversion, and statutory theft claims; and (6) DLCC's claim for the delinquent real estate taxes is dismissed under Rule 7012(b)(6).

The Court will issue a separate decision on Wisconsin Mutual's Motion for Judgment on the pleadings. The motion was filed on November 8, 2019. DLCC opposed the motion and filed its response on December 16, 2019. Wisconsin Mutual filed its reply six days later. On January 7, 2020, this Court held a preliminary hearing on Wisconsin Mutual's motion and set a 30-day

23

deadline for the parties to submit supplemental briefs. The parties did not file any supplemental briefs by the established deadline. The Court will review the filed pleadings and render its decision in a timely manner.

### CONCLUSION

For these reasons, the Motion to Abstain and Remand or, in the Alternative, to Dismiss the Adversary Proceeding is denied in part and granted in part with respect to DLCC's real estate tax claim.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: April 24, 2020

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge